# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**TERRY LAMAR MCCOY**                                                                 **PLAINITFF**

**V.**                          **NO. 4:22-cv-01120-LPR-ERE**

**IVERSON and**
**ELKIN**                                                                               **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections**

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**II.   Summary**

On November 17, 2022, *pro se* plaintiff Terry Lamar McCoy, a pre-trial detainee at the W.C. Brassell Adult Detention Center ("Detention Center"), filed this civil rights lawsuit under 42 U.S.C. § 1983. *Doc. 1*. Mr. McCoy alleges that Defendants Carolyn Iverson, LPN, and Darrell Elkin, M.D., who worked under

contract to provide medical services to Detention Center prisoners, were deliberately indifferent to his dental health needs. Mr. McCoy sues Defendants in their individual and official capacities, seeking compensatory and punitive damages.[1] Defendants have now filed a motion for summary judgment, a brief in support, and a statement of undisputed facts seeking judgment as a matter of law. *Docs. 35, 36, 37*. They argue that they are entitled to qualified immunity because they took reasonable steps to ensure that Mr. McCoy received dental treatment.[2] Mr. McCoy has filed a response, Defendants have filed a reply, and Mr. McCoy has filed a sur-reply. *Docs. 42, 43, 44, 45, 52, 53, 54, 55, 56*. The motion is ripe for review.

For the reasons explained below, Defendants' motion for summary judgment (*Doc. 35*) should be GRANTED.

## III. <u>Discussion</u>

### A. **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most

---

[1] In his request for relief, Mr. McCoy also asks the Court to "determine" that Defendants violated his constitutional rights. However, "a declaration of past liability . . . instead of future rights . . . renders declaratory relief unavailable." *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019). Rather, "declaratory relief is limited to prospective declaratory relief." *Id*.

[2] Defendants do not address Mr. McCoy's official-capacity claims. However, because Mr. McCoy fails to come forward with evidence that either Defendant violated his constitutional rights, he cannot establish individual or official liability. See *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (explaining that the Eighth Circuit has consistently recognized that a plaintiff cannot succeed with an official capacity claim without individual liability for an underlying substantive constitutional violation).

favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

B.   **Factual Background**

On May 27, 2021, Mr. McCoy arrived at the Detention Center. *Doc. 35-1 at 4*. He alleges that over the course of a ten-month period, starting at the end of 2021 or the beginning of 2022, he submitted fifteen to twenty electronically filed medical requests, complaining about a painful, decayed tooth. *Doc. 35-4 at 7-9*. According to Mr. McCoy, Defendant Iverson was the only nurse at the Detention Center at the time, and she never responded to his medical requests or assisted him with his dental problems. *Id*.

Mr. McCoy reports that he suffered excruciating pain and developed a tooth abscess that eventually burst. *Id. at 8- 9*. He states that after he filed this lawsuit, a different nurse who started working at the Detention Center on January 9, 2023 responded to his medical requests, and a dentist pulled his decayed tooth and prescribed antibiotics. *Id*.

Defendants have provided copies of Mr. McCoy's medical request forms and treatment records. *Doc. 35-1 at 3-44*. By affidavit, Detention Center Jail Administrator Jimmy Hudson states that the records provided are the authentic records contained in Mr. McCoy's jail file. *Doc. 35-1 at 3-44*. Contrary to Mr. McCoy's account, a review of these documents, summarized below, show that during the relevant time period, Mr. McCoy submitted four medical requests regarding tooth pain, and Defendants responded to each one.[3]

On May 26, 2022, Mr. McCoy submitted a medical request complaining that he had a "hole" in his tooth and needed to have it pulled. *Id. at 33*. He stated that he

---

[3] In his response in opposition to summary judgment, Mr. McCoy states that he filed a grievance about Defendant Iverson's attitude, and she retaliated against him by falsifying his medical records. *Doc. 45 at 2*. According to Mr. McCoy, he is unable to present evidence that Defendants Iverson ignored his medial requests because, with Defendant Elkin's assistance, she falsified his record and made it appear that he received medical care for his tooth pain. Mr. McCoy offers no evidence to support this implausible explanation for his lack of evidence. "When [as here] opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

was "in tremendous pain." *Id*.

On May 30, 2022, Dr. Elkin had a visit with Mr. McCoy and prescribed him pain medication and ordered a dental appointment. *Id. at 6, 9; Doc. 35-2 at 1*. A notation on Dr. Elkin's orders states: "name has been added to the dental list." *Doc. 35-1 at 2. at 1*. Pursuant to Dr. Elkin's orders, Defendant Iverson obtained a July 3. 2022 dental appointment for Mr. McCoy. [4]

On June 24, 2022, Mr. McCoy submitted a medical request complaining that he was suffering from a "major tooth ache" as a result of a "hole" in his tooth and requested pain medication. *Doc. 35-1 at 10*.

On June 27, 2022, medical staff provided Mr. McCoy pain medication and his medical records indicate "dental appt." *Id. at 11*.

On July 3, 2022, Defendant Elkin again ordered a dentist appointment for Mr. McCoy's. *Id*.; *Doc. 35-2 at 1*.

On July 25, 2022. Mr. McCoy submitted a medical request complaining that he had two "rotten teeth in [his] mouth" that needed to be removed. *Doc. 35-1 at 18*.

---

[4] *Doc. 39 at 1*. By affidavit, Defendant Iverson states: "The appointment was scheduled for July 3, 2022. The dentist did not advise McCoy to have his teeth removed (nursing notes attached as Exhibit "1"). *Id*. It is not clear whether Defendant Iverson asserts or assumes that Mr. McCoy was seen by a dentist on July 3, 2022. However, the nursing notes attached to her affidavit provide no information about a July 3, 2022 dental appointment, and Mr. McCoy has testified that he was not seen by a dentist until 2023. *Doc. 35-4 at 10*. Viewing the facts in a light most favorable to Mr. McCoy, the dental appointment scheduled for July 3, 2022 did not occur.

He explained that, although medical personnel had prescribed him pain medication "for this matter for the past two months[,] the meds only work for short periods." *Id.* The following day, medical personnel responded that Mr. McCoy's name had been added to the dental list. *Id. at 19*.

On August 8, 2022, Defendant Elkin ordered a dental appointment for Mr. McCoy. *Id. at 6, 11*; *Doc. 35-2 at 1*. Pursuant to the order, Defendant Iverson obtained a February 6, 2023 dental appointment. *Doc. 39 at 1*.

By affidavit, Defendant Iverson explains that

> "[her] experience scheduling dental appointments for detainees during this time period was often difficult, as most local dental clinics refused to see jail detainees, and the one local clinic that would allow detainees had limited availability due to staffing issues and adherence to policies regarding COVID-19 and separation of civilian and detainee patients. Accordingly, wait times for detainee dentist appointments could often take weeks and was entirely out of the control of jail staff."

*Doc. 39 at 1-2*.

On November 14, 2022, Defendant Elkin ordered Mr. McCoy antibiotics and pain medication. *Doc. 35-1 at 7, 13*.

On February 6, 2023,[5] Mr. McCoy was seen by a dentist as scheduled for a comprehensive dental exam and cleaning. *Doc. 35-2 at 14*. Mr. McCoy reported to the dentist that he experienced pain "a while ago" but did not have any complaints

---

[5] Defendants had stopped providing medical services at the Detention Center before the February 6, 2023 appointment. *Doc. 35-2 at 2; Doc. 35-3 at 2*.

of pain on that date. *Id*. His dental assessment included a "non-restorable tooth." *Id. at 15*.

After February 2023, neither Defendant provided medical services to the Detention Center. *Id. at 2*; *Doc. 39 at 2*.

Defendants explain that, once an inmate was scheduled to be seen by a third-party healthcare provider, they did not have any responsibility "to oversee the transport of detainees from the jail to those appointments" nor did they have any way to know whether Mr. McCoy was transported by jail staff to the appointment. *Doc. 53 at 1-2, Doc. 54 at 1-2*.

Mr. McCoy does not dispute that Defendants were not responsible for transporting him to any third-party healthcare provider. However, he contends that Defendants were obligated to notify deputies about any scheduled medical appointments so that they could arrange for Mr. McCoy's transportation.[6] *Doc. 56-1 at 3*. Without any supporting evidence, and contrary to his medical records, Mr. McCoy also states that "Defendant Elkin never gave any order to Defendant Iverson to place an appointment for plaintiff's dental work and Iverson never placed the

---

[6] In his response, Mr. McCoy also argues that Defendants' affidavits are false because they were not signed or notarized. *Doc. 56-1 at 5-6*. However, on February 9, 2024, Defendants submitted signed and notarized affidavits. *Docs. 53, 54*.

7

appointment for dental work." *Id*. This statement is controverted by the medical records.

### C. Qualified Immunity

Defendants assert qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 129 (2009). In this case, each Defendant is entitled to qualified immunity because Mr. McCoy fails to come forward with supported facts showing the deprivation of a constitutional right.

### D. Medical Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."[7] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). At the summary judgment stage, Mr. McCoy "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference.[8] *Id. at 575*. Instead, deliberate indifference requires culpability akin to criminal recklessness, which is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

---

[7] Given Mr. McCoy's pretrial status, his inadequate medical care claims arise under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. See *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). However, the Eighth Circuit has applied the Eighth Amendment's deliberate indifference standard to inadequate medical care claims raised by both convicted inmates and pretrial detainees. See *Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 860 & n.4 (8th Cir. 2018) (applying deliberate indifference standard to claim that correctional officer failed to monitor and provide adequate medical care to detainee who committed suicide).

[8] Mr. McCoy's pleadings appear to assert only federal constitutional claims and those are the only claims addressed. Accordingly, it is not necessary to assess whether either of the remaining Defendants acted negligently in violation of state law. See also 28 U.S.C. § 1367(c)(3) (district court may, once it has dismissed federal claims on which its original jurisdiction is based, decline to exercise jurisdiction over supplemental state law claims).

In addition, disagreement with treatment decisions alone cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted).

Based on the undisputed evidence before the Court, no reasonable juror could conclude that Defendants were deliberately indifferent to Mr. McCoy's dental needs. Rather, to the contrary, Defendants: (1) promptly responded to Mr. McCoy's medical requests; (2) addressed Mr. McCoy's complaints of pain by providing him medication; and (3) placed Mr. McCoy on the list to be seen by a dentist on several occasions. Such conduct can hardly be described as criminally reckless. Furthermore, Mr. McCoy has not come forward with any evidence that either Defendant intentionally caused any delay in scheduling Mr. McCoy for a dental examination or had control over the scheduling of Mr. McCoy's dental appointment or transporting Mr. McCoy to those appointments. While Defendants may have been negligent in failing to ensure that Mr. McCoy was promptly seen by a dentist, such conduct fails to rise to a constitutional level.

Finally, while Mr. McCoy alleges that he suffered from an abscessed tooth and that his pain grew increasingly worse as a result of Defendants' failure to provide him prompt dental care, he has failed to "'place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). At the summary judgment stage, such an omission is fatal to Mr. McCoy's medical deliberate indifference claim. See *Corwin v. City of Independence, MO*, 829 F.3d 695 (8th Cir. 2016) (summary judgment appropriate where pretrial detainee failed to produce verifying medical evidence showing a detrimental effect due to delay in medical treatment); and *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 2001) (a prisoner must demonstrate that the delay in obtaining medical treatment adversely affected his prognosis, or that defendants ignored an acute or escalating situation).

Based on this record, Mr. McCoy has failed to present any evidence to create a dispute of material fact that he suffered any constitutional deprivation as a result of Defendants' conduct. Therefore, Defendants are entitled to qualified immunity on Mr. McCoy's medical deliberate indifference claim against them.

### IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 35*) be GRANTED.

2. Mr. McCoy's claims be DISMISSED, with prejudice.

3. The Clerk be instructed to close this case.

Dated 26 February 2024.

_____
UNITED STATES MAGISTRATE JUDGE