IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TERRY LAMAR MCCOY**                                                                             **PLAINTIFF**

v.                                          **Case No: 4:22-cv-01120-LPR**

**IVERSON,[1] et al.**                                                                             **DEFENDANTS**

## ORDER

The Court has received a Recommended Disposition (RD) from United States Magistrate Judge Edie R. Ervin (Doc. 58) and Mr. McCoy's Objections (Doc. 59). The Court has conducted a *de novo* review of the RD and has carefully considered Mr. McCoy's Objections as well as the entire case record. The RD recommends granting in full Defendants' Motion for Summary Judgment (Doc. 35). The Court agrees with the RD that Dr. Elkin is entitled to summary judgment on the claims against him. But, with respect to the claims against Nurse Iverson, the Court concludes that the Motion should be denied; those claims should proceed to trial.[2]

In the Court's view, the RD does not adopt the most pro-Plaintiff reading of the record that a reasonable jury could find to have occurred. The medical records *dispositively* show only that Dr. Elkin (1) prescribed Mr. McCoy medications for his teeth, and (2) ordered that dental

---

[1] The Court directs the Clerk of Court to update the Defendants' names on the docket sheet to Carolyn Iverson, *Nurse, W.C. Dub Brassell Adult Detention Center*, and Darrell Elkin, *Doctor, W.C. Dub Brassell Adult Detention Center*.

[2] Mr. McCoy brought Fourteenth Amendment deliberate-indifference claims against Dr. Elkin and Nurse Iverson in their personal and official capacities. *See* Compl. (Doc. 1); Am. Compl. (Doc. 5); Order (Doc. 12). Dr. Elkin and Nurse Iverson moved for summary judgment. Although it appears they want summary judgment on all claims in the case, Dr. Elkin and Nurse Iverson did not present any arguments specifically geared toward the official capacity claims. The RD nonetheless recommends granting summary judgment on the official capacity claims because (1) the RD recommends granting summary judgment on the underlying personal capacity claims, and (2) where the underlying personal capacity claims fail, official capacity claims cannot survive. RD (Doc. 58) at 2 n.2. With respect to Dr. Elkin, the Court agrees. But, as noted in the main text of this Order, the Court concludes that the personal capacity claim against Nurse Iverson survives this stage of the proceedings. Accordingly, Defendants' failure to make arguments related specifically to the official capacity claims means that the official capacity claim against Nurse Iverson survives as well. Still, without deciding the issue, the Court wants Mr. McCoy to be aware that, assuming the evidence at trial resembles the record now, it is quite likely that the official capacity claim against Nurse Iverson will not ultimately make it to the jury.

appointments be scheduled for Mr. McCoy.³ The medical records do not *dispositively* show that Dr. Elkin ever personally met with Mr. McCoy to examine his mouth. Nor does any other evidence. Similarly, the medical records do not *dispositively* show that Nurse Iverson ever placed Mr. McCoy on the dental list or otherwise scheduled a dental appointment for Mr. McCoy.⁴ Nor does any other evidence.

Mr. McCoy disputes—by way of his testimony—that Dr. Elkin met with him concerning his dental issues at any time in 2022.⁵ Without *dispositive* evidence lined up against Mr. McCoy's testimony, this must be considered a genuine factual dispute. Similarly, Mr. McCoy disputes that Nurse Iverson placed him on the dental list (or otherwise scheduled a dental appointment for him). For this dispute, Mr. McCoy relies on his testimony that he was never sent to the dentist at any time in 2022.⁶ The Court agrees that a reasonable jury could use the absence of an appointment taking place to infer that Nurse Iverson never placed him on the dental list (or otherwise scheduled a dental appointment for him). Without *dispositive* evidence lined up against Mr. McCoy's testimony and the just-discussed inference therefrom, this must be considered a genuine factual dispute.

---

³ With respect to the medications, the record contains proof (by way of Mr. McCoy's late-July medical request) that Mr. McCoy actually received the medications ordered. *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 40 ("[I] have been prescribed meds for this matter twice in the past two months. [T]he meds only work for short periods, while [I'm] on it."). Mr. McCoy does not contest that he received these medications. There is no evidence that anyone but Dr. Elkin made the medication orders. As for the dental appointments, the notations in the medical records show Dr. Elkin's orders for dental appointments directly adjacent to his orders for medication. Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 7–8, 11. Given that the record conclusively establishes the reliability of the medication notations, no reasonable jury could question the reliability of Dr. Elkin's noted orders for dental appointments. Mr. McCoy's implication that Dr. Elkin fraudulently added these notations after this lawsuit commenced is entirely implausible given the location and context of the notations.

⁴ The medical records contain a handwritten notation from Nurse Iverson—off to the side of Dr. Elkin's May 30, 2022 order for a dental appointment—that indicates she added Mr. McCoy's name to the dental list. *See* Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 7. But, unlike the situation with respect to Dr. Elkin, there is nothing else in the record to establish the reliability of Nurse Iverson's notation. And the notation's placement and context do not give it the same standing as Dr. Elkin's notations. Long story short, it is not *dispositive* in the way that the video evidence was *dispositive* in *Scott v. Harris*, 550 U.S. 372, 380 (2007).

⁵ McCoy Decl. (Doc. 45) at 2.

⁶ *Id*.

Some of the genuinely disputed facts just set forth above are material to the personal capacity claim against Nurse Iverson. So, a jury is necessary to settle them before the Court can make a final qualified-immunity decision.[7] On the other hand, none of the genuinely disputed facts above are material to the personal capacity claim against Dr. Elkin. That is, even resolving all the genuine disputes of fact in favor of Mr. McCoy, Dr. Elkin is still entitled to judgment as a matter of law.

A.  Nurse Iverson

With respect to Nurse Iverson, the Court concludes that—resolving all genuine fact disputes in favor of Mr. McCoy and drawing all reasonable inferences from the facts in favor of Mr. McCoy—a reasonable jury could digest the record as follows.

1.  On May 26, 2022, Nurse Iverson received a medical request from Mr. McCoy that, in relevant part, said he was "in tremendous pain!!!" because he had "a hole in [his] tooth" that he thought "need[ed] to [be] pulled."[8] Nurse Iverson relayed some or all of this information to Dr. Elkin, who shortly thereafter prescribed pain medication for Mr. McCoy.[9] Dr. Elkin also ordered that a dental appointment be scheduled for Mr. McCoy.[10] Pursuant to Dr. Elkin's orders, Nurse Iverson got the medicine to Mr. McCoy, but she did not add Mr. McCoy to the dental treatment list.[11]

---

[7] *Cf. Ellison v. Lesher*, 796 F.3d 910, 918 (8th Cir. 2015); *Littrell v. Franklin*, 388 F.3d 578, 585 (8th Cir. 2004); *Lampkins v. Thompson*, 337 F.3d 1009, 1014 (8th Cir. 2003). Following the Court's final qualified-immunity decision, the jury may also be necessary to ultimately decide the case.

[8] *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 33.

[9] *Id*. at 9.

[10] *Id*.

[11] As explained above, because Mr. McCoy never attended any appointment during this time period, it would be reasonable for a jury to infer that a July 3, 2022 appointment was never scheduled and that Nurse Iverson did not place Mr. McCoy's name on the dental list prior to July 3, 2022. Whether Nurse Iverson placed Mr. McCoy's name on the dental list during this time period (or during any relevant time period) is one of the genuine disputes of fact that will need to be settled by a jury prior to the Court's final qualified-immunity determination. What is not in dispute, however, is that it was part of Nurse Iverson's job to place inmates on the dental list at Dr. Elkin's orders

2. Nearly a month later, on June 24, 2022, Nurse Iverson received another medical request from Mr. McCoy, in which he asked for something "to ease the pain" from the "hole in his tooth" that was causing "a major tooth ache."[12] Nurse Iverson relayed some or all of this information to Dr. Elkin, who shortly thereafter prescribed antibiotics and pain medication, and ordered the scheduling of a dental appointment.[13] Nurse Iverson got the medicine to Mr. McCoy, but she did not do anything related to the order to schedule an appointment.

3. Another month later, on July 26, 2022, Nurse Iverson received another medical request from Mr. McCoy, in which he said in relevant part:

> [I] have two rotten teeth in my mouth. [I] have been prescribed meds for this matter twice in the past two months. [T]he meds only work for short periods, while [I'm] on it. [T]he problem is the decay in the tooth will not go away without proper dental work. [I] am hereby requesting to have my teeth removed to solve the tremendous throbbing tooth aches and pains [I']m going through daily![14]

Nurse Iverson relayed some or all of this information to Dr. Elkin. On August 8, 2022, Dr. Elkin again ordered that a dental appointment be scheduled for Mr. McCoy.[15] But Nurse Iverson did not schedule one.[16]

---

and to then schedule the dental appointments. On this record, no jury could conclude otherwise. *See* Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 2; Ex. 3 to Defs.' Mot. for Summ. J. (Doc. 35-3) at 1–2; Defs.' Statement of Undisputed Facts (Doc. 37) at 1–2; Pl.'s Statement of Disputed Material Facts (Doc. 44) at 2–3; Ex. A (Elkin Aff.) to Defs.' Reply Br. (Doc. 52) at 4; Ex. B (Iverson Aff.) to Defs.' Reply Br. (Doc. 52) at 6–7.

[12] *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 32.

[13] *Id.* at 11.

[14] *Id.* at 18.

[15] *Id.* at 11.

[16] In her Affidavit, Nurse Iverson says that, shortly after August 8, 2022, she placed Mr. McCoy on the dental list and procured a dentist appointment for him for February 6, 2023. Ex. 3 to Defs.' Mot. for Summ. J. (Doc. 35-3) at 1. But Mr. McCoy specifically testified that it was another nurse (who replaced Nurse Iverson in January of 2023) that scheduled the February 6, 2023 appointment. McCoy Decl. (Doc. 45) at 2. Given the amount of time between August 8, 2022 and February 6, 2023, a reasonable jury could resolve this factual dispute in favor of Mr. McCoy. That is, a reasonable jury could infer that Nurse Iverson did not place Mr. McCoy on the dental list following Dr. Elkin's August 8, 2022 order. Whether Nurse Iverson placed Mr. McCoy on the dental list during this time period (or during any relevant time period) is one of the genuine disputes of fact that will need to be settled by a jury prior to the Court's final qualified-immunity determination.

4.      Mr. McCoy did not get to visit the dentist until February 6, 2023.[17]  By that time, Nurse Iverson and Dr. Elkin were no longer working at the Detention Center.[18]  New medical staff obtained the appointment for Mr. McCoy.[19]

On these facts, summary judgment in favor of Nurse Iverson is not appropriate.  Defendants make two very short and specific arguments as to why they should get summary judgment.  First, they contend that "[Mr.] McCoy's dental care is not a 'serious medical need.'  Issues with his teeth are not life threatening[,] nor do dental issues typically cause recurring and excruciating pain."[20]  Second, they contend that, "even assuming [Mr.] McCoy's dental issues are a serious medical need, Defendants provided him with adequate medical attention" because "[e]ach time [Mr.] McCoy complained, Dr. Elkin provided [Mr.] McCoy with treatment and sent him to the dentist[,]" and "[e]ach time [Dr.] Elkin referred [Mr.] McCoy to the dentist, [Nurse] Iverson scheduled those appointments."[21]

With respect to the claims against Nurse Iverson, the fatal flaw in this argument is that whether Nurse Iverson ever placed Mr. McCoy on the dental list to get an appointment is a genuinely disputed material fact.  For purposes of summary judgment, we must therefore assume that Nurse Iverson intentionally ignored each of Dr. Elkin's orders to obtain a dental appointment for Mr. McCoy.[22]  That would certainly constitute deliberate indifference.  But would it be

---

[17] Pl.'s Statement of Disputed Material Facts (Doc. 44) at 3.

[18] Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 2; Ex. 3 to Defs.' Mot. for Summ. J. (Doc. 35-3) at 2.

[19] Pl.'s Statement of Disputed Material Facts (Doc. 44) at 4–5.

[20] Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 36) at 4.

[21] *Id.*

[22] If Nurse Iverson had failed to place Mr. McCoy on the dental list just once, there might well be an argument that a reasonable jury could only conclude that her omission was accidental or negligent.  But here the facts for purposes of summary judgment must be read as Nurse Iverson failing to place Mr. McCoy on the dental list at least three times (e.g., each time Dr. Elkin ordered an appointment to be scheduled).  A jury could reasonably infer intentionality (or gross recklessness) from these repeat failures.  *Cf. De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 803 (8th Cir. 2022) (concluding that "frequently" leaving an inmate without replacement hearing aid batteries,

deliberate indifference to a serious medical need of which Nurse Iverson was aware? The answer is yes. "A medical need is objectively serious if it has been diagnosed by a physician as requiring treatment or if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."[23] Nurse Iverson knew that Mr. McCoy's dental condition was serious enough for the doctor to order antibiotics, pain medication, and dental appointments. And, by July 26, 2022, she knew that Mr. McCoy was in tremendous throbbing pain every day despite the antibiotics administered.[24] Under the Eighth Circuit's caselaw, that meets the test for a serious medical need.[25]

---

causing the hearing aids to be non-functional for days or weeks at a time, is an "alleged repeated pattern of neglect [that] could justify an inference of deliberate indifference"); Model Crim. Jury Instr. 8th Cir. 7.05 Proof of Intent or Knowledge ("You may, but are not required to, infer that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.").

[23] *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotation marks and citation omitted).

[24] Given the facts Nurse Iverson knew, she would have known that there was a serious risk Mr. McCoy's tooth was infected (or well on the road to it) and getting worse over time.

[25] *See Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (concluding that a three-week delay in dental care, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (per curiam) (reversing grant of summary judgment where there was evidence that dentist learned of inmate's tooth-related swelling, headache, and severe pain on March 19, but did not remove tooth until April 15); *Moore v. Jackson*, 123 F.3d 1082, 1086–87 (8th Cir. 1997) (per curiam) (denying summary judgment to medical defendants who delayed adequate treatment for a toothache for eight months that became infected and ultimately required extraction); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (finding plaintiff's extreme dental pain, bleeding gums, swelling, and difficulty sleeping and eating constituted a serious medical need). *See also Cooper v. Schriro*, 189 F.3d 781, 783–84 (8th Cir. 1999) (per curiam) (concluding that plaintiff had stated a claim for deliberate indifference to serious medical needs where he alleged that he had filed a medical service request regarding his painful decayed and cracked teeth and was refused treatment); *Maddox v. Davis*, 164 F. App'x 559, 561 (8th Cir. 2005) (unpublished per curiam) (concluding that plaintiff had stated a claim for deliberate indifference to serious medical needs where he alleged that he had a painful dental condition, that the medically indicated treatment for his condition was an immediate extraction, and that whatever care he received was inadequate for his condition).

In their five-page Opening Brief, Defendants only mention in passing the second prong of the qualified-immunity analysis. Br. in Supp. of Defs.' Mot. for Summ. J. (Doc. 36) at 2. They note that, under the qualified-immunity doctrine, "[o]fficials who reasonably exercise their discretion are immune from suit, while those who violate clearly established law are held accountable." *Id*. But, beyond these vagaries, Defendants do not develop an argument with respect to the clearly-established prong of the qualified-immunity analysis. Instead, Defendants focus on the first prong of the analysis, arguing that "dental care is not a serious medical need" and that, in any event, "Defendants provided [Plaintiff] with adequate medical attention." *Id*. at 4. The absence of an argument concerning the clearly-established prong of the qualified-immunity test does not appear to have been an oversight. Defendants' two-page Reply Brief also lacks any mention of this prong of the test. *See* Doc. 52. Given Defendants' failure to develop this argument, the Court will likewise limit its analysis to the first prong of the test.

The RD suggests that an additional reason for granting summary judgment is Mr. McCoy's failure to provide medical evidence to establish the detrimental effect of any delay in treatment.[26] But Defendants did not raise this issue as a reason for summary judgment, and thus they have waived or forfeited it for this stage of the proceedings.[27] In any event, the record in this case contains evidence that the delay in treatment caused Mr. McCoy real pain and suffering regardless of whether it affected the ultimate prognosis with respect to his teeth. Under cases like *Boyd*,[28] nothing further is required.

B.  Doctor Elkin

With respect to Dr. Elkin, the Court concludes that—resolving all genuine fact disputes in favor of Mr. McCoy and drawing all reasonable inferences from the facts in favor of Mr. McCoy— a reasonable jury could digest the record as follows.

---

[26] RD (Doc. 58) at 11.

[27] It is worth noting that when Mr. McCoy filed his Complaint in November of 2022, he alleged that his tooth condition "is an ongoing serious medical need that has been continuously denied for the past 7 (seven) months, and now it has gotten so bad to the point that the whole side of my face swells up, and it will get even wors[e] by the day, . . . and I have to eat every day risking more food getting inside my tooth and causing more damage." Compl. (Doc. 1) at 8. In his November 2023 deposition, Mr. McCoy testified that he filed this lawsuit because, while waiting for treatment, the decayed tooth "had developed an abscess[.]" Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 35-4) at 7. "Eventually," he explained, "the abscess busted in [his] mouth, and [his] face, [his] swelling and stuff, went down, and [he] eventually got [his] tooth pulled once [he] got medicated. . . . But all this was after [he] filed—when [he] filed this lawsuit, that's when [he] got some attention to get [his] tooth pulled." *Id*. at 8. And Mr. McCoy declared under penalty of perjury that "[b]ecause of the lack of treatment [his] pain and cavity grew wors[e] and [he] swelled up with an abscess in [his] mouth with an infection." McCoy Decl. (Doc. 45) at 2. Mr. McCoy also addressed this issue in his summary-judgment briefing, in response to Defendants' assertion that his dental condition was not a serious medical need: "[T]he Plaintiff was neglected and delayed so long to get treatment that he grew an abscess in his mouth and swelled the whole side of his face up and the infection, if gotten into Plaintiff's bloodstream, could have caused health issues and even the Plaintiff's death." Br. in Supp. of Pl.'s Resp. to Mot. for Summ. J. (Doc. 43) at 6.

In his Statement of Facts, Mr. McCoy states that, "when the Plaintiff finally did get to attend a dentist appointment, on 2-6-2023, was for an x-ray of [his] mouth, where Jefferson Comprehensive Care's Dental Clinic gave Plaintiff antibiotic for any infection that still might've been there, all before they pulled Plaintiff's tooth to ensure that the infection [didn't] get into Plaintiff's bloodstream." Pl.'s Statement of Disputed Material Facts (Doc. 44) at 3. The February 6, 2023 dental record does not reflect the prescription for antibiotics, but it does show that a follow-up dental appointment for a tooth extraction was indicated. Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 14–16.

[28] 47 F.3d at 969; *see supra* note 25.

7

1.      On or around May 30, 2022, Dr. Elkin learned from Nurse Iverson that Mr. McCoy was "in tremendous pain!!!" because of a "a hole in [his] tooth" that (at least according to Mr. McCoy) "need[ed] to [be] pulled."[29] Dr. Elkin did not bring Mr. McCoy in for an examination.[30] Instead, he ordered pain medicine for Mr. McCoy and also ordered that a dental appointment be scheduled for him.[31] There is no evidence that Dr. Elkin followed up to make sure an appointment was scheduled.

2.      Nearly a month later, on or around June 27, 2022, Dr. Elkin learned from Nurse Iverson that, a few days earlier, Mr. McCoy had asked for something "to ease the pain" of the "hole in his tooth" that was causing "a major tooth ache."[32] Again, Dr. Elkin did not bring Mr. McCoy in for an examination.[33] Instead, Dr. Elkin ordered antibiotics and pain medicine for Mr. McCoy, and also ordered that a dental appointment be scheduled.[34] There is no evidence that Dr. Elkin followed up to make sure an appointment was scheduled.

3.      Another month later, sometime between July 26, 2022 and August 8, 2022, Dr. Elkin leaned from Nurse Iverson that Mr. McCoy recently complained that "[he has] two

---

[29] *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 33.

[30] In Dr. Elkin's Affidavit, and in a 2023 letter purportedly summarizing his 2022 treatment of Mr. McCoy, Dr. Elkin says that he personally visited with Mr. McCoy on May 30, 2022 (and on subsequent occasions) about Mr. McCoy's teeth. *See* Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 1–5. But Mr. McCoy says that he never visited with Dr. Elkin about his teeth. McCoy Decl. (Doc. 45) at 2. Relying on the Supreme Court's decision in *Scott v. Harris*, the RD appears to resolve this factual dispute in favor of the Defendants. *See* RD (Doc. 58) at 4 n.3, 5. But *Scott v. Harris* does not have such long legs. The case at bar is not one where undisputable video evidence shows one side's story to be true. The purported summary of treatment detailed in Dr. Elkin's May 19, 2023 letter—a document which was created well after this lawsuit was filed in November of 2022—does not carry the same evidentiary significance as medical records generated contemporaneously with a physician's treatment of a patient. *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 6–7; Ex. 2 to Defs.' Mot. for Summ. J. (Doc. 35-2) at 4–5. In any event, sparse, vague medical records handwritten by one or more defendants are not the same things as video evidence and cannot *necessarily* be used to dispositively resolve a dispute of fact at summary judgment. In the circumstances of this case—where the actual handwritten medical records do not even state that Dr. Elkin visited with Mr. McCoy about his teeth—neither the medical records nor the 2023 summation letter are dispositive on this point.

[31] *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 9.

[32] *Id*. at 32.

[33] *See supra* note 30.

[34] *See* Ex. 1 to Defs.' Mot. for Summ. J. (Doc. 35-1) at 11.

rotten teeth in [his] mouth," that the previously-prescribed medications "only work for short periods," that "the decay in the tooth [will] not go away," and that he has "tremendous throbbing tooth aches and pains . . . daily[.]"[35] This time, Dr. Elkin neither brought Mr. McCoy in for an examination nor prescribed him any medication. On August 8, 2022, however, Dr. Elkin did order that Mr. McCoy be scheduled for a dental appointment.[36] There is no evidence that Dr. Elkin followed up to make sure an appointment was scheduled.

Under these facts, Dr. Elkin is still entitled to summary judgment. For each occasion where the record shows or suggests that Dr. Elkin learned of a complaint from Mr. McCoy concerning Mr. McCoy's teeth,[37] Dr. Elkin responded by ordering a dental appointment for Mr. McCoy. In addition to that, on the first two occasions, Dr. Elkin prescribed pain medication for Mr. McCoy. In addition to that, on the second occasion, Dr. Elkin prescribed an antibiotic for Mr. McCoy. Although it is a close call—because (1) there is no evidence that Dr. Elkin examined Mr. McCoy in relation to his dental complaints, and (2) there is no evidence that Dr. Elkin prescribed pain medication or antibiotics for Mr. McCoy on the third occasion—Dr. Elkin's alleged conduct is more akin to negligence or malpractice than to deliberate indifference. Dr. Elkin did not completely ignore Mr. McCoy's pleas for treatment. And, although it is true that Mr. McCoy's complaint on the third occasion described tremendous daily

---

[35] *Id*. at 18. Even on the most pro-Plaintiff read of this record, there is no evidence to suggest Dr. Elkin learned of this complaint before August 8, 2022 (or thereabouts), when Dr. Elkin ordered Mr. McCoy a dental appointment.

[36] *Id*. at 11.

[37] Mr. McCoy's testimony is that he was complaining of tooth problems as far back as 2021. *See* Ex. 4 to Defs.' Mot. for Summ. J. (Doc. 35-4) at 8; McCoy Decl. (Doc. 45) at 1. But there is no evidence that Dr. Elkin received notice of any such complaint prior to learning of the medical requests discussed in this Order.

throbbing pain, it did not suggest bleeding, swelling, or other symptoms that would obviously require emergency care from Dr. Elkin.[38]

### C. Conclusion

For the reasons explained above, the Court adopts the findings and conclusions of the RD **only** to the extent they are consistent with the foregoing analysis. Accordingly, Defendants' Motion for Summary Judgment (Doc. 35) is GRANTED IN PART and DENIED IN PART. Mr. McCoy's claims against Nurse Iverson proceed to trial. With respect to Mr. McCoy's claims against Dr. Elkin, judgment will be entered for Dr. Elkin at the appropriate time.

When a *pro se* litigant's claims make it this far, the Court generally appoints a lawyer to help the plaintiff with the trial. In the Court's experience, the appointment of a lawyer is very beneficial to the plaintiff's attempt to succeed at trial. It is also very beneficial to the overall administration of justice. Within 21 days from the date of this Order, Mr. McCoy is directed to notify the Court as to whether he wants the Court to appoint a lawyer to represent him in this case. The Court will take Mr. McCoy's wishes into account when determining whether or not to make such an appointment.

IT IS SO ORDERED this 11th day of September 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[38] As discussed *supra* in the second paragraph of note 25, Defendants did not develop an argument regarding the second prong of qualified immunity. Had they done so, this might have been a much easier call. The Court has identified no cases that would make clear Dr. Elkin's conduct rose to the level of deliberate indifference.